UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **JAMISON ABRAMS and NICHOLAS KIRK,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | |
| ) | CAUSE NO.   1:11-cv-652-DKL-WTL |
| **MIRAMED REVENUE GROUP, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

## ENTRY ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Cause is before the Court on the parties' cross-motions for summary judgment. On July 13, 2012, Plaintiffs Jamison Abrams ("Mr. Abrams") and Nicholas Kirk ("Mr. Kirk") filed their motion for summary judgment. [Doc. 50.] On September 17, 2012, Defendant MiraMed Revenue Group, LLC ("MMRG") filed its response to Plaintiffs' motion for summary judgment. [Doc. 57.] On the same day, MMRG moved for summary judgment. [Doc. 58.] On October 16, 2012, Plaintiffs responded to MMRG's motion for summary judgment. [Doc. 60.] On October 29, 2012, MMRG filed a reply to its motion for summary judgment. [Doc. 64.] For the reasons stated below, the Court **GRANTS** MMRG's motion for summary judgment, and **DENIES** Plaintiffs' motion for summary judgment.

### I.   BACKGROUND

On May 13, 2011, Mr. Abrams and Mr. Kirk, as well as three other plaintiffs, Laura Carter ("Ms. Carter"), Justin Duncan ("Mr. Duncan"), and Ted McDougalle ("Mr.

1

McDougalle"), initiated this lawsuit by filing a complaint against MMRG pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.  According to the complaint, MMRG is a debt collection agency, which sought to collect what appear to be unrelated debts on behalf of St. Francis or Solutions Healthcare Management from Mr. Abrams, Ms. Carter, Mr. Duncan, Mr. Kirk, and Mr. McDougalle.  The Plaintiffs allege that MMRG sent a collection letter to each of them, threatening to report him or her to a credit reporting agency if he or she failed to pay their respective debts within 30 days. Plaintiffs further claim that MMRG never reported the debts to a credit reporting agency.  As a result, Plaintiffs contend that MMRG violated 15 U.S.C. § 1692e, because that threat was a false, deceptive, or misleading representation in order to collect on a debt.  [See generally Doc. 1 at 1-7; Doc. 38 at 1-2.]

On February 10, 2012, Plaintiffs moved for leave to amend their complaint.  [Doc. 38 at 1.]  All of the Plaintiffs, except Mr. McDougalle, claimed that he or she discovered additional claims after examining the "account notes" on each Plaintiffs' account that were disclosed by MMRG during discovery on December 28, 2011.  [Doc. 38 at 3-4.] Mr. McDougalle did not assert any new claims and sought dismissal of his original claim.  [Doc. 38 at 4.]  In the proposed amended complaint, Mr. Abrams, Ms. Carter, Mr. Duncan, and Mr. Kirk continue to assert their original claim, as well as seeking to add new factual allegations and claims.  [Doc. 38 at 4.]  The Court denied Plaintiffs' motion with respect to the new claims of Ms. Carter and Mr. Duncan, because they were outside of the applicable Statute of Limitations, and did not relate back to the original

complaint.  [Doc. 38 at 6-8.]  The Court granted Plaintiffs' motion for leave to amend the complaint with respect to the new claims asserted by Mr. Abrams and Mr. Kirk, finding that those claims were not barred.  [Doc. 38 at 9-13.]

In their amended complaint, Mr. Abrams and Mr. Kirk omitted their initial claims where they allege that MMRG sent a collection letter to each of them, threatening to report him or her to a credit reporting agency if he or she failed to pay their respective debt within 30 days in violation of 15 U.S.C. § 1692e.  [See Doc. 40.]  Mr. Abrams and Mr. Kirk concurrently filed a motion to dismiss those claims.  [Doc. 41.]  The Court dismissed that motion as moot in light of their filing of the amended complaint.  [Doc. 48.]  The Court later granted Plaintiffs' motion for leave to file a second amended complaint to correct a clerical error.  [Doc. 52.]

Thus, the following claims remain in the amended complaint:  Mr. Abrams alleges a violation of 15 U.S.C. § 1692d(5), and Mr. Kirk alleges a violation of 15 U.S.C. § 1692d(5), and two violations of 15 U.S.C. § 1692c(a)(2).  [Doc. 54.]  Specifically, Mr. Abrams alleges that MMRG improperly placed 15 telephone calls to his house over a 33-day period in violation of 15 U.S.C. § 1692d(5).  [Doc. 54 at 4.]  Mr. Kirk alleges that MMRG improperly placed 39 telephone calls to his house over a nine-week period in violation of 15 U.S.C. § 1692d(5); that MMRG improperly attempted to communicate with Mr. Kirk after being informed that Mr. Kirk obtained counsel on September 28, 2010, in violation of 15 U.S.C. § 1692c(a)(2); and that MMRG improperly attempted to communicate with Mr. Kirk after learning of his bankruptcy on March 4, 2011, in

3

violation of 15 U.S.C. § 1692c(a)(2). [Doc. 54 at 5-7.] In their summary judgment brief, Mr. Abrams and Mr. Kirk seem to raise additional claims alleging further FDCPA violations.

In his summary judgment brief, Mr. Abrams asserts two claims that MMRG's conduct violated 15 U.S.C. § 1692d(5), where MMRG placed an inordinate amount of telephone calls to Mr. Abrams' residence. First, Mr. Abrams states that MMRG harassed him by calling him after telephone conversations between the parties were terminated on April 21, 2010, and April 22, 2010. [Doc. 51 at 9, citing Doc. 50-4 at 2.][1] Second, Mr. Abrams complains that MMRG continuously contacted him in an attempt to collect a debt, where MMRG called Mr. Abrams 15 times during a 33-day period. [Doc. 51 at 10.]

---

[1] To support their allegations, Mr. Abrams and Mr. Kirk rely solely on MMRG's account notes. In a response to MMRG's requests for production, Plaintiffs stated that they could not "produce all telephone records showing the time of each telephone call received from [MMRG] that each Plaintiff claims forms the basis for any claims in this Lawsuit." [Doc. 57-2 at 8.] Curiously, Plaintiffs seek to prove their case by using MMRG's account notes. A summary judgment ruling must be based on admissible evidence. Neither party discusses the admissibility of the account notes. Presumably, the account notes could be admissible as a business record. See Fed. R. Evid. 803(6). It will be noted that Plaintiffs' counsel staff provided an affidavit indicating that the account notes were received during discovery. [Doc. 50-3 at 1.] However, such account notes have not been authenticated. See Fed. R. Evid. 901. The Court notes that Plaintiffs' expert opined that such conduct violated the FDCPA. [Doc. 51 at 10.] The so-called expert, Andrew Harmelin ('Mr. Harmelin"), is presently the founding member of a credit and collection consulting company, which provides engineering, architectural, and environmental companies in Philadelphia, Pennsylvania, cash flow improvement by offering recovery of past due accounts, cash flow solutions, and credit evaluation. [Doc. 28-1 at 2.] Mr. Harmelin also purports to provide expert witness "expertise and testimony to attorneys in support of litigation regarding credit and collection issues." [Doc. 28-1 at 2.] The Court finds that Plaintiffs' expert provided no substance to the resolution of this case.

In his summary judgment brief, Mr. Kirk asserts six FDCPA violations against MMRG. First, Mr. Kirk claims that MMRG harassed him in violation of 15 U.S.C. § 1692d(5) by calling him after he purportedly informed MMRG that he obtained counsel. [Doc. 51 at 7.] Second, Mr. Kirk claims that MMRG harassed him in violation of 15 U.S.C. § 1692d(5) by calling him 11 times after MMRG discerned that Mr. Kirk filed for Chapter 13 bankruptcy on November 11, 2010. [Doc. 51 at 8.] Third, Mr. Kirk claims that MMRG harassed him in violation of 15 U.S.C. § 1692d(5) placing two telephone calls to his home on August 4, 2010. [Doc. 51 at 8.] Fourth, Mr. Kirk claims that MMRG harassed him in violation of 15 U.S.C. § 1692d(5) by placing 39 telephone calls to his home during a nine-week period. [Doc. 51 at 11.] Fifth, Mr. Kirk claims that MMRG violated 15 U.S.C. § 1692c(a)(2) by attempting to contact him after he told MMRG that he purportedly obtained counsel on September 28, 1010. [Doc. 51 at 12.] Sixth, Mr. Kirk seems to argue that MMRG violated 15 U.S.C. § 1692c(a)(2) by attempting to contact him after MMRG discerned that he obtained counsel on March 4, 2011. [Doc. 51 at 13.]

## II.   LEGAL STANDARD

### A.   SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). "Material facts" are those

under the applicable substantive law that "might affect the outcome of the suit." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; 106 S.Ct. 2505; 91 L.Ed.2d 202 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a motion for summary judgment, the Court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). When ruling on cross-motions for summary judgment, the Court construes the facts and inferences therefrom "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006). Moreover, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. The Court need not "scour the record in search of evidence to defeat a motion for summary judgment," *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996), and it is not required to construct a paper trial on the merits of the claim. *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999). Finally, neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## B.  ALLEGED FDCPA VIOLATIONS

The FDCPA is a consumer protection law, which is designed to reduce abusive debt collection practices that would likely disrupt a debtor's life. *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000). In the amended complaint, both Mr. Abrams and Mr. Kirk alleged violations of 15 U.S.C. § 1692d(5) (harassing a debtor by making numerous telephone calls), and Mr. Kirk alleged two violations of 15 U.S.C. § 1692c(a)(2) (precluding contact with a debtor after the debt collector learns that the debtor has legal representation). As previously noted, Mr. Abrams and Mr. Kirk raise additional claims in their summary judgment brief alleging further violations of those FDCPA provisions.

## III.  DISCUSSION

## A.  STATUTE OF LIMITATIONS

In its summary judgment response [Doc. 57 at 6], and summary judgment brief [Doc. 59 at 6.], MMRG argues that the all of Mr. Abrams' claims and some of Mr. Kirk's claims took place outside of the FDCPA's one-year statute of limitations' period. See 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."). See also *Woods v. Wells Fargo Fin. Bank*, 2010 WL 4629905, No. 1:10-cv-219-RLY-TAB (S.D. Ind. Nov. 4, 2010), slip op at 6.

7

With respect to Mr. Abrams, MMRG argues that "all collection activity upon which he rests his § 1692d(5) claims took place prior to February 11, 2011." [Doc. 57 at 9; see also Doc. 59 at 9.] As noted above, Mr. Abrams refers to MMRG's account notes, documenting calls on April 21, 2010, and April 22, 2010, as the basis for a violation of 15 U.S.C. § 1692d(5). [Doc. 51 at 9, citing Doc. 50-4 at 2.] Additionally, the 15 calls during the 33-day period complained of by Mr. Abrams took place between April 17, 2010, and May 25, 2010, according to the account notes. [Doc. 57 at 3.] Based on these dates, the conduct complained of by Mr. Abrams clearly took place outside of the FDCPA's one-year limitations' period. As such, the Court concludes that Mr. Abrams' claims are time barred.

Turning to Mr. Kirk, the Court observes that he essentially brings six FDCPA violations against MMRG. First, Mr. Kirk claimed that MMRG's telephone call on September 30, 2010, constituted harassment under 15 U.S.C. § 1692d(5), where he purportedly told MMRG on the previous day that he obtained counsel ("Mr. Kirk's first claim"). [Doc. 51 at 7.] Based on that date, the complained of conduct falls outside of the limitations' period. Second, Mr. Kirk complained that MMRG called him 11 times after MMRG discovered his bankruptcy on November 11, 2010, contrary to 15 U.S.C. § 1692d(5), and such calls took place between April 8, 2011, and May 16, 2011 ("Mr. Kirk's second claim"). [Doc. 50-4 at 8; Doc. 51 at 8.] Because the complained of conduct took place after February 11, 2011, it may be actionable. Third, Mr. Kirk claims that MMRG harassed him under 15 U.S.C. §1692d(5), by placing two telephone calls to his residence

8

on August 4, 2010 ("Mr. Kirk's third claim"). [Doc. 51 at 8.] Based on the date, this conduct falls outside of the limitations period. Fourth, Mr. Kirk also contended that the 39 calls placed by MMRG over a nine-week period constituted a violation of 15 U.S.C. § 1692d(5) ("Mr. Kirk's fourth claim"). [Doc. 51 at 11.] While Mr. Kirk did not expressly identify the nine-week period, the account notes reflect that the calls were placed between June 21, 2010, and October 12, 2010. [Doc. 50-4 at 4-6; Doc. 51 at 3; Doc. 57 at 10.] These dates lie outside of the limitations' period. Fifth, Mr. Kirk further asserted that MMRG's communications with him should have ceased after he informed MMRG that he was represented by counsel on September 28, 2010, in violation of 15 U.S.C. § 1692c(a)(2) ("Mr. Kirk's fifth claim"). [Doc. 51 at 12.] Once again, the date of this conduct lies outside of the limitations' period. Sixth, Mr. Kirk charges that MMRG improperly attempted to contact him when MMRG learned that he obtained counsel on March 4, 2011, contrary to 15 U.S.C. § 1692c(a)(2) ("Mr. Kirk's sixth claim"). [Doc. 51 at 13.] Accordingly, this conduct falls within the limitations period.

In sum, the Court concludes that Mr. Kirk's first, third, fourth, and fifth claims are time barred. The Court will address Mr. Kirk's second and sixth claims below. Before doing so, the Court must briefly comment on the applicability of the relation-back doctrine.

Mr. Abrams and Mr. Kirk argue that the relation-back doctrine applies to their claims. They make an assertion that MMRG's conduct, in attempting to collect debts, relate back to the original complaint. [Doc. 61 at 7.] Mr. Abrams and Mr. Kirk have a

9

broad view of the relation-back doctrine, contending that the same core facts, MMRG's attempts to collect debts, are maintained with merely the addition of new legal theories. [Doc. 61 at 7-8.] They further assert that the Statute of Limitations issue has already been decided by the Court in the ruling on Plaintiff's motion for leave to file the amended complaint. [Doc. 61 at 8.] Mr. Abrams and Mr. Kirk state that the Court found "that claims alleged by Plaintiffs Abrams and Kirk were viable to avoid dismissal on statute of limitations grounds at that time." [Doc. 61 at 8.] Mr. Abrams and Mr. Kirk misconstrued the Court's previous ruling. The Court reviewed the new claims asserted by Mr. Abrams and Mr. Kirk under the plausibility standard announced in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009), where the Court accepted the well-pleaded facts in the complaint as true. *McCauley v. Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Under that standard, the Court found that Mr. Abrams and Mr. Kirk set forth enough details in the proposed amended complaint to support their new claims. [Doc. 38 at 9-12.] The Court, nonetheless, observed that Mr. Abrams and Mr. Kirk did not set forth specific dates in the proposed amended complaint, and that "[f]urther discovery may reveal if such claims are viable." [Doc. 38 at 6-7.]

In sum, the Court did not conclude that the new claims asserted by Mr. Abrams and Mr. Kirk were indeed viable. As already determined by this Court, the relation-back doctrine will not save the time-barred claims of Mr. Abrams and Mr. Kirk. Accordingly, the aforementioned claims are barred by the Statute of Limitations as set

forth by the FDCPA. See generally *Draper v. Martin*, 664 F.3d 1110, 1111-1112 (7th Cir. 2011). The Court concludes that the MMRG is entitled to summary judgment in its favor with respect to Mr. Abrams' two claims, and Mr. Kirk's first, third, fourth, and fifth claims.

## C.   MR. KIRK'S REMAINING CLAIMS

After determining that the aforementioned claims are time barred, the Court will now address Mr. Kirk's remaining claims: his second and sixth claims as stated in his summary judgment brief. With his second claim, Mr. Kirk essentially alleges that between April 8, 2011, and May 10, 2011, MMRG violated the FDCPA under 15 U.S.C. § 1692d(5) by calling him 11 times. [Doc. 50-4 at 8; Doc. 51 at 8.] With respect to his sixth claim, Mr. Kirk contends that MMRG improperly contacted him in violation of 15 U.S.C. § 1692c(a)(2) after MMRG noted that he filed for Chapter 13 bankruptcy protection. [Doc. 51 at 12-13.]

In addressing Mr. Kirk's second claim, the Court must determine whether the 11 telephone calls placed by MMRG to Mr. Kirk's home over a 39-day period from April 8, 2011, to May 16, 2011, constitutes a violation under 15 U.S.C. § 1692d(5). [Doc. 50-4 at 8.] As noted above, there is no indication that MMRG actually communicated with Mr. Kirk on any of these telephone calls: three of the calls were not answered, and eight of the calls were noted "LMTC WITH." [Doc. 50-4 at 8.] Nonetheless, liability may attach under 15 U.S.C. § 1692d(5) if a debt collector causes a telephone to ring repeatedly or

11

continuously with intent to annoy, abuse, or harass the person at the called number in connection with the collection of a debt.

In his summary judgment brief, Mr. Kirk states that even though he never filed a Chapter 13 bankruptcy case, the notation regarding such bankruptcy in MMRG's account notes "is important to demonstrate [MMRG's] intention to harass Plaintiff Kirk in its attempt to collect the debt at issue in this case."  [Doc. 51 at 8.]  MMRG responds that it initiated collection efforts on Mr. Kirk's account when MMRG learned that Mr. Kirk had not filed for Chapter bankruptcy.  [Doc. 57 at 13.]  In conclusory fashion, MMRG states that "[t]hese facts do not support any violation of the FDCPA and Kirk has not presented any facts to contradict these."  [Doc. 57 at 13.]  While neither party addresses this specific issue with any depth, the parties provided a number of string cites regarding whether a certain number of telephone calls over a given period of time constitute harassment for purposes of 15 U.S.C. § 1692d(5).

Under 15 U.S.C. § 1692d(5), "[a]ctionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages." *Bassett v. I.C. Sys., Inc.*, 715 F.Supp.2d 803, 809 (N.D. Ill. 2010) (internal quotation and citation omitted).  Generally, "[t]he reasonableness of this volume of calls and their pattern is a question of fact for the jury."  *Akalwadi v. Risk Mgmt Alternatives, Inc.*, 336 F.Supp.2d 492, 506 (D. Md. 2004).  See also *Bassett*, 715 F.Supp.2d at 810 (whether 31 calls over a 12-day period amounted to harassment under 15 U.S.C. § 1692d(5) was a question of fact for the jury).  However, in appropriate cases, the question can be

12

resolved as a matter of law.  *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179-1180 (11th Cir. 1985).

In this case, the Court believes that it can determine whether the 11 calls over a 39-day period amounted to actionable harassment can be decided as a matter of law. Here, despite Mr. Kirk's allegations that MMRG caused his phone to ring repeatedly, there is no evidence before the Court that MMRG did so with an intent to annoy, abuse, or harass him.  Rather, the evidence before the Court reflects that MMRG called Mr. Kirk 11 times over a 39-day period, and there is no indication that any of MMRG's representatives actually spoke with him.  The account notes reflect that the calls were placed to Mr. Kirk's home.  The evidence also reflects that MMRG never called Mr. Kirk more than once a day:  on April 8, 2011; April 15, 2011; April 19, 2011; April 21, 2011; April 22, 2011; April 26, 2011; April 29, 2011; May 2, 2011; May 3, 2011; May 12, 2011; and May 16, 2011.  [Doc. 50-4 at 8.]  This evidence suggests a difficulty of reaching Mr. Kirk, rather than an intent to harass.  *Saltzman v. I.C. Sys., Inc.*, 2009 WL 3190359, No. 09–10096 (E.D. Mich. Sep. 30, 2009), slip op at 14.

Thus, even after construing the evidence in a light most favorable to Mr. Kirk, the Court finds that it is insufficient to permit a finder of fact to conclude that MMRG violated 15 U.S.C. § 1692d(5).  See generally *Lee v. Credit Mgmt, LP*, 846 F.Supp.2d 716, 725 (S.D. Tex. 2012).  See also *Udell v. Kan. Counselors, Inc.*, 313 F.Supp.2d 1135, 1143-1144 (D.C. Kan. 2004) (placing four calls to individual over the course of seven days without leaving messages did not constitute harassment).  Ultimately, the Court finds

13

that Mr. Kirk failed to carry the burden of establishing that MMRG's calls in this case violated 15 U.S.C. § 1692d(5).  See generally *Kerwin v. Remittance Assistance Corp.*, 559 F.Supp.2d 1117, 1124 (D. Nev. 2008).  Beyond the vague allegations contained in the complaint and summary judgment brief, Mr. Kirk has failed to identify any specific circumstances surrounding these telephone calls that would show any intent by MMRG to harass, annoy, or abuse.  See *Saltzman*, slip op at 14.  Mr. Kirk has not identified any evidence regarding the amount, frequency, pattern, or content of MMRG's calls that would suggest anything other than a legitimate, but persistent, effort to reach him.  *Id.*  See also *Hemsworth*, 476 F.3d at 490.  Accordingly, the Court concludes that MMRG is entitled to summary judgment in its favor regarding Mr. Kirk's second claim.

Next, the Court will address Mr. Kirk's sixth claim, where he claims that MMRG violated 15 U.S.C. § 1692c(a)(2).  In the summary judgment brief, Mr. Kirk implies that MMRG should have known that he obtained counsel as a result of his Chapter 13 bankruptcy.  In making these arguments, Mr. Kirk relies on the account notes, wherein MMRG entered notification in its collection history on March 4, 2011, that Mr. Kirk filed for Chapter 13 bankruptcy protection.  [Doc. 50-4 at 7; Doc. 51 at 3, 12-13.]  In his summary judgment brief, Mr. Kirk, nonetheless, concedes that this entry was erroneous, because he never filed a Chapter 13 bankruptcy case.  [Doc. 51 at 3.]  Notwithstanding MMRG's erroneous entry, Mr. Kirk contends that "the fact that [MMRG] ignored its own notes indicating a bankruptcy was in place and continued to attempt to collect a debt demonstrates that [MMRG] intended to harass [Mr. Kirk] in violation of the FDCPA."

14

[Doc. 51 at 3.] In the response to MMRG's motion for summary judgment, Mr. Kirk claims that MMRG "knew, or could have readily ascertained, Plaintiff's attorney's name and address, if it only bothered to pay attention to the information provided by Plaintiff to Defendant." [Doc. 61 at 9.] Mr. Kirk states that he informed MMRG that he was represented by counsel with respect to the debt during a September 28, 2010 call. [Doc. 61 at 8.]

To provide important background, MMRG attached the declaration of Sandra Schade ("Ms. Schade"),[2] MMRG's senior vice president of operations, to its summary judgment response to provide some context regarding the account notes. [Doc. 57-1 at 1.] In the declaration, Ms. Schade provided: "Between November 9 and 11, 2010, [MMRG] reviewed Kirk's accounts to determine if a collection lawsuit was appropriate, which included a bankruptcy scrub." [Doc. 57-1 at 3.] According to Ms. Schade, "[t]he bankruptcy scrub showed that Kirk had filed for Chapter 13 bankruptcy." [Doc. 57-1 at 3.] Ms. Schade provided that MMRG noted that Chapter 13 bankruptcy in Mr. Kirk's account, and MMRG ceased all collection efforts, including telephone calls and letters. [Doc. 57-1 at 3.] Based on Ms. Schade's review of the account notes and her investigation into this matter, she opined that MMRG "made no collection efforts after it received information that Kirk had filed for Chapter 13 bankruptcy." [Doc. 57-1 at 3.]

---

[2] "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). See also *Captain v. ARS Nat'l Services, Inc.*, 636 F.Supp.2d 791, 795 (S.D. Ind. 2009). There is no indication that Ms. Schade's declaration suffers from any deficiencies.

According to Ms. Schade, MMRG held Mr. Kirk's account until March 4, 2011, when it checked the status of the Chapter 13 bankruptcy; at that time, MMRG discovered that the bankruptcy was complete. [Doc. 57-1 at 3.] Ms. Schade provided that MMRG closed Mr. Kirk's account on March 8, 2011, and sent it back to the creditor. [Doc. 57-1 at 3.] Ms. Schade then stated that the creditor sent a new account for Mr. Kirk to MMRG on April 4, 2011. [Doc. 57-1 at 3.] At that point, Ms. Schade indicated that MMRG ran a bankruptcy scrub for Mr. Kirk's new account, and the scrub did not get any matches. [Doc. 57-1 at 4.] Ms. Schade noted that MMRG discerned that the previous bankruptcy scrub on Mr. Kirk's former account returned an erroneous result. [Doc. 57-1 at 4.] According to Ms. Schade, "[t]he Chapter 13 bankruptcy that had previously showed up for Kirk in the [former] account . . . was for someone else entirely and Kirk had not filed for bankruptcy." [Doc. 57-1 at 4.] Ms. Schade stated that MMRG resumed collection efforts on Mr. Kirk's account after MMRG discerned that Mr. Kirk did not in fact file for Chapter 13 bankruptcy. [Doc. 57-1 at 4.]

For MMRG to be liable under 15 U.S.C. § 1692c(a)(2), MMRG must have known that Mr. Kirk was represented by counsel regarding the debt, and had knowledge of, or could readily ascertain, counsel's name and address. Mr. Kirk's claim under this provision is based on a presumption that MMRG must have known that Mr. Kirk had counsel in light of the notations regarding Chapter 13 bankruptcy in the account notes. Mr. Kirk cites no authority to support his presumption. Significantly, the provision

16

requires more for liability to attach, namely, that MMRG had knowledge of, or could readily ascertain, the name and address of Mr. Kirk's counsel.

While Mr. Kirk claimed that he told MMRG that he obtained counsel during a September 28, 2010 call, [Doc. 61 at 8.], he admits that he did not have counsel in 2010. [Doc. 57-2 at 2, 7.]  Further, there is no indication that MMRG actually communicated with Mr. Kirk on any of the 11 telephone calls placed between April 8, 2011, and May 16, 2011.  [Doc. 50-4 at 8.]  Mr. Kirk filed for bankruptcy on April 28, 2011 [Doc. 57-2 at 8.], and MMRG placed five telephone calls to him from April 29, 2011, to May 16, 2011. [Doc. 50-4 at 8.]  However, MMRG's account notes reflect "DEBTOR FILED CHAP 7 BK" on May 19, 2011, and there is no indication that MMRG attempted to contact Mr. Kirk after the May 19, 2011 notation.  [Doc. 50-4 at 8.]  Notably, there is no indication that MMRG actually communicated with Mr. Kirk during any of those five telephone calls.

In the response to MMRG's motion for summary judgment, Mr. Kirk states that MMRG's "own collection notes show that there were multiple instances where [MMRG] was put on notice of legal counsel, yet the notes show a completely [sic] lack of any attempt to ascertain the legal counsel's identity or address."  [Doc. 61 at 10.]  After reviewing the record, there is no evidence that Mr. Kirk provided adequate notice to MMRG regarding counsel.  In fact, there is no indication that Mr. Kirk ever apprised MMRG that he obtained counsel.  Moreover, the entries regarding the Chapter 13 bankruptcy were erroneous.  Mr. Kirk actually benefitted from this error, where MMRG

17

suspended any collection efforts against him for more than one month. Ultimately, Mr. Kirk presents no evidence that MMRG received actual notice from either him, his counsel, or the bankruptcy court about his bankruptcy. See *Keisler v. Encore Receivable Mgmt. Inc.*, 2008 WL 1774173, No. 1:06-cv-912-LJM-WTL (S.D. Ind. Apr. 17, 2008), slip op at 8. Mr. Kirk fails to demonstrate, by specific factual allegations, that a genuine issue of material fact exists as to his sixth claim. See *Hemsworth*, 476 F.3d at 490. The Court finds that MMRG could not have reasonably ascertained that Mr. Kirk was represented by counsel following the reopening of his account, let alone ascertain the name or address of Mr. Kirk's counsel, without making an attempt to contact him first.

The Court finds that the facts do not support a violation of 15 U.S.C. § 1692c(a)(2). See *Hill*, 454 F.Supp.2d at 782. Accordingly, the Court concludes that the MMRG is entitled to summary judgment in its favor with respect to Mr. Kirk's sixth claim.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** MMRG's motion for summary judgment [Doc. 58.], and **DENIES** Plaintiffs' motion for summary judgment.   [Doc. 50.]

Dated:   03/29/2013

*Denise LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution sent via the Court's ECF system.